IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY D. TURNER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09 - 1568 |
| | ) | |
| v. | ) | District Judge David S. Cercone |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| J. LEGGETT, *Correctional Officer IV at SCI* | ) | |
| *Fayette;* DR. JIN; MICHELLE LUCAS; JOHN | ) | |
| MCANANY, *CRNS at SCI Greene;* NEDRA | ) | |
| GREGO, *RN at SCI Greene;* DORINA VARNER, | ) | |
| *Chief Grievance Coordinator at Central Office;* | ) | |
| DR. HERBIK, *Doctor at SCI Fayette;* R. | ) | |
| TRETINIK, *CHCA at SCI Fayette;* CHRIS | ) | |
| MYERS, *Physician Assistant at SCI Fayette;* S. | ) | |
| BERRIER, *CRNS at SCI Fayette;* B. WALSCH, | ) | |
| *Correctional Officer #1 at SCI Fayette;* R. J. | ) | |
| GODINES, *Correctional Officer #1 at SCI Fayette* | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.     RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss Amended Complaint filed by the

Medical Defendants Dr. Herbik, Dr. Jin, Ronald Long, Michelle Lucas, and Chris Myers (ECF No.

59) be granted.  It is further recommended that the Motion to Dismiss Amended Complaint filed by

the Commonwealth Defendants Ascenio, S. Berrier, R. J. Godines, Nedra Grego, J. Leggett, B.

Walsch, John Mcanany, R. Tretinik, Dorina Varner, Vasbinder (ECF No. 64) be granted.

## II.     REPORT

Plaintiff, Jeffrey D. Turner, a Pennsylvania inmate presently incarcerated at the State

Correctional Institution at Rockview, located in Bellefonte, Pennsylvania, commenced this civil

action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, against various individuals

employed either by or through the Pennsylvania Department of Corrections (DOC) regarding the

medical care he has received while incarcerated in various Pennsylvania state correctional institutions and smoking in outside exercise areas by the guards. After Plaintiff filed his second amended complaint (ECF No. 51), both the Commonwealth Defendants and the Medical Defendants filed motions to dismiss. For the reasons that follow, both of these motions should be granted.

### A. Standard of Review

Defendants have filed motions to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6). With regard to these motions, the complaint must be read in the light most favorable to the plaintiff and all well-pleaded, material allegations in the complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97 (1976). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n. 6 (1963). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v.Twombly, 550 U.S. 554, 556 (2007) (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The court must accept as true all allegations of the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985). The Court, however, need not accept inferences drawn by the plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) (citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp., 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp., 550 U.S. at 555. Additionally, "a civil rights claim 'must contain specific allegations of fact which indicate a

deprivation of constitutional rights; allegations which are nothing more than broad, simple and conclusory statements are insufficient to state a claim under § 1983." ' Coronado v. Goord, No. 99 Civ. 1674, 2000 WL 1372834, at *2 (S.D.N.Y. 2000) (quoting Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 887 (2d Cir. 1987)).[1] It is not proper for the court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the ... laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Id. (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, a court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney. Haines v. Kerner, 404 U.S. 519, 520 (1972). In a § 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir. 2002) (quoting Holley v. Dep't of Veteran Affairs, 165 F.3d 244, 247-48 (3d Cir.

---

1. . See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1951 (U.S. 2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) and providing further guidance on the standard set forth therein).

1999)). *See also* <u>Nami v. Fauver</u>, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting <u>Higgins</u>, 293 F.3d at 688 ).

### B. Failure to Exhaust Administrative Remedies

All of the Defendants have asserted that this Court may review only those claims that Plaintiff has fully exhausted as required by the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996). In this regard, in the PLRA, Congress amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e, concerning suits by prisoners. Before the amendments, prisoners challenging the conditions of their confinement under 42 U.S.C. § 1983 were not required to exhaust administrative remedies before filing suit. The PLRA amended section 1997e(a), as follows, making exhaustion a mandatory requirement.

> (a)     Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), as amended.

The United States Court of Appeals for the Third Circuit analyzed the applicability of the exhaustion requirement in 42 U.S.C. § 1997e in <u>Nyhuis v. Reno</u>, 204 F.3d 65 (3d Cir. 2000) (Bivens action brought by a federal inmate) and <u>Booth v. Churner</u>, 206 F.3d 289 (3d Cir. 2000) (civil rights action brought by a state prisoner). In each of these cases, the Court of Appeals announced a bright line rule that inmate-plaintiffs must exhaust all available administrative remedies before they can file an action in federal court concerning prison conditions. In so holding, the court specifically rejected the notion that there is ever a futility exception to section 1997e(a)'s mandatory exhaustion requirement. <u>Booth</u>, 206 F.3d at 300; <u>Nyhuis</u>, 204 F.3d at 66. A unanimous Supreme Court

affirmed the Court of Appeals' holding in <u>Booth v. Churner</u>, 532 U.S. 731 (2001) where the Court confirmed that in the PLRA Congress mandated complete exhaustion of administrative remedies, regardless of the relief offered through those administrative procedures. In addition, in <u>Porter v. Nussle</u>, 534 U.S. 516 (2002), the Supreme Court clarified that the PLRA's exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or specific episodes and whether they allege excessive force or other conduct.

The available administrative remedies for Pennsylvania inmates are codified in the Pennsylvania Department of Corrections Policy Statement No. DC-ADM 804-1, entitled "Consolidated Inmate Grievance Review System." *See, e.g.* <u>Mitchell v. Horn</u>, 318 F.3d 523 (2003) (discussing DOC Grievance System). The purpose of the grievance system is to ensure that every individual committed to DOC custody has access to a formal procedure through which the resolution of problems or other issues of concern arising during the course of confinement may be sought. The DOC grievance system applies to all state correctional institutions and provides three levels of review: 1) initial review by the facility grievance coordinator; 2) appeal of initial review to the superintendent or regional director; and 3) final appeal to the chief hearing examiner.

Inmate grievances must be in writing and in the format provided on the forms supplied by the institution. An initial grievance must be submitted by the inmate to the Facility Grievance Coordinator within fifteen (15) working days after the event upon which the claim is based. If the Facility Grievance Coordinator determines that the issue being grieved is in accordance with DC-ADM 804, the Facility Grievance Coordinator designates a staff member to serve as the Grievance Officer for that issue. If the Facility Grievance Coordinator determines that the issue being grieved is not in accordance with DC-ADM 804, it is returned to the inmate unprocessed with a DC-804, Part 3, Grievance Rejection Form (Attachment C) enumerating the reason(s) the grievance

was not accepted. The grievance, if resubmitted, must be resubmitted under the same grievance number within 5 working days. The Grievance Officer is required to provide a written response to the inmate within 10 working days of receipt of the grievance. An inmate may appeal an Initial Review decision to the Facility Manager in writing within 10 working days from the date of the Initial Review decision. The Facility Manager must notify the inmate of his/her decision within 10 working days of receiving the appeal. Any inmate who is dissatisfied with the disposition of an appeal from the Facility Manager may submit an appeal to the Secretary's Office of Inmate Grievances and Appeals within 15 working days from the date of the Facility Manager's decision. An inmate appealing a grievance to final review is responsible for providing the Secretary's Office of Inmate Grievances and Appeals with all required documentation relevant to the appeal. A proper appeal to final review shall include photocopies of the initial grievance, initial review response, the inmate appeal to the Facility Manager, and the Facility Manager's decision; failure to provide the proper documentation may result in the appeal being dismissed. The Secretary's Office will issue a decision within 30 working days after receipt of an appeal.

In the instant action, official records indicate that, during the relevant time period, Plaintiff filed only the following grievances relating to his claims through final review: 230934, 243100, 254112, 288177, 315846, 316284, 316981 and 291381. The Court of Appeals for the Third Circuit has held that a prisoner's failure to comply with the procedural and substantive requirements of DOC's grievance policy, as set forth in DC ADM 804, results in procedural default, thereby precluding an action in federal court. *See* <u>Spruill v. Gillis</u>, 372 F.3d 218 (3d Cir. 2004).[2] The United States Supreme Court adopted a similar holding in <u>Woodford v. Ngo</u>, 548 U.S. 81 (2006) wherein

---

2. The relevant regulations require the inmate to include a statement of the facts relevant to the claim, identify any persons who may have information that could be helpful in resolving the grievance and include information on attempts to resolve the matter informally.

it held that an untimely or otherwise procedurally defective administrative grievance or appeal does not satisfy the PLRA's mandatory exhaustion requirement.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." This Court has described the doctrine as follows: "[A]s a general rule ⋯ courts should not topple over administrative decisions unless the administrative body not only has erred, but has erred against objection made at the time appropriate under its practice." Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

Woodford, 548 U.S. at 90-91 (internal citations, quotations and footnotes omitted).

The Court further noted that "[c]onstruing § 1997e(a) to require proper exhaustion also fits with the general scheme of the PLRA, whereas respondent's interpretation would turn that provision into a largely useless appendage. The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodard, 548 U.S. at 93. The Court concluded that the benefits of exhaustion could only be realized if the prison grievance system is given a fair opportunity to consider the claims, which required the grievant to comply with the procedural rules. Id. at 94.

In the case at bar, Plaintiff procedurally defaulted all of his claims that he did not timely appeal to final review. As stated by the Court of Appeals for the Third Circuit, "it is beyond the power of this court--or any other--to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." Nyhuis, 204 F.3d at 73 (quotation omitted).

The Supreme Court of the United States reiterated this tenet when it affirmed the Third Circuit's holding in <u>Booth</u>.  Consequently, this Court is required to follow the Supreme Court's directive in <u>Booth</u> and dismiss Plaintiff's claims that he did not fully exhaust through the available administrative procedures. *Accord* <u>Quillar v. Brinkman</u>, 63 Fed.Appx. 361, 362 (9ᵗʰ Cir. 2003) ("The district court correctly dismissed Quillar's action because it was clear from the face of the amended complaint that he had failed to exhaust available prison administrative remedies."); <u>Rozzelle v. Rossi</u>, 307 Fed. Appx. 640, 642 (3d Cir. 2008) (finding that inmate's failure to file for final review amounted to procedural default thereby precluding his claims); <u>Eakle v. Palakovich</u>, 200 Fed. Appx. 155, 156, 2006 WL 2917531 (3d Cir. 2006).

### C. Liability under 42 U.S.C. § 1983

With respect to the exhausted claims, Plaintiff's Complaint seeks to assert liability against the Defendants pursuant to 42 U.S.C. § 1983.  To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-331 (1986).

1. <u>Medical Treatment Claims</u>

Plaintiff's medical treatment claims invoke liability under the Eighth Amendment.  In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements.  First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human

need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer v. Brennan, 511 U.S. 825 (1994); Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must show prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Gamble v. Estelle, 439 U.S. 897 (1978). The first showing requires Plaintiff to objectively show that the medical need was "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. Gaudreault v. Municipality of Salem, 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The subjective prong requires Plaintiff to show that Defendant Saavedra "possessed 'a sufficiently culpable state of mind in denying medical care' ... greater than mere negligence." Miller v. Calhoun County, 408 F.3d 803, 813 (6th Cir. 2005). Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993). Deliberate indifference also may be found where the prison official persists in a particular course of treatment "in the face of resultant pain and risk of permanent injury." White v. Napoleon, 897 F.2d 103, 109-111 (3d Cir. 1990). The "deliberate indifference" standard for purposes of liability under section 1983 is a stringent standard of fault requiring proof that a defendant disregarded a known or obvious

consequence of his action. <u>Board of County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397, 410 (1997). The defendant must be both aware of facts from which the inference could be drawn that a substantial harm exists and he must also draw the inference. <u>Farmer</u>, 511 U.S. at 837. An official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id.* Medical malpractice may give rise to a tort claim in state court but does not necessarily rise to the level of a federal constitutional violation. <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 185 (3d Cir. 1993); <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 67 (3d Cir. 1993).

The Supreme Court explained the difference between negligence and constitutional claims in <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1978). In that case, the prisoner, Gamble, was injured when a bale of cotton fell on him while he was unloading a truck. He went to the unit hospital where a medical assistant checked him for a hernia and sent him back to his cell. He returned to the hospital where he was given pain pills by an inmate nurse and then was examined by a doctor. The following day, his injury was diagnosed as a lower back strain; he was prescribed a pain reliever and a muscle relaxant. Over the course of several weeks, Gamble was seen by several doctors who prescribed various pain relievers and provided him with medical work excuses. Ultimately, despite his protests that his back hurt as much as it had the first day, medical staff certified Gamble to be capable of light work. During the next two months, Gamble received a urinalysis, blood test, blood pressure measurement, and pain and blood pressure medication. Subsequently, a medical assistant examined Gamble and ordered him hospitalized for treatment of irregular cardiac rhythm.

The Supreme Court held that Gamble's allegations failed to state a claim upon which relief could be granted against the defendant, both in his capacity as a treating physician and as the medical director of the Corrections Department.

> Gamble was seen by medical personnel on 17 occasions spanning a 3-month period . . .. They treated his back injury, high blood

pressure, and heart problems. Gamble has disclaimed any objection to the treatment provided for his high blood pressure and his heart problem; his complaint is "based solely on the lack of diagnosis and inadequate treatment of his back injury." The doctors diagnosed his injury as a lower back strain and treated it with bed rest, muscle relaxants and pain relievers. Respondent contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued. The Court of Appeals agreed, stating: "Certainly an x-ray of (Gamble's) lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." <u>But the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court under the Texas Tort Claims Act</u>.

<u>Gamble</u>, 427 U.S. at 107 (internal citations omitted) (emphasis added).

Plaintiff's exhausted medical claims are as follows.

On June 3, 2008, Plaintiff submitted Grievance No. 230934 wherein he complained about damage to his organs and lymph nodes and his request to be referred to an ear, nose and throat specialist. On June 13, 2008, Plaintiff received a response to this grievance, which provides as follows.

On 8/15/07 you had oral surgery at UPMC. A cyst was removed.

You claim that an MRI was done and showed damaged lymph nodes. This is false. A Ct scan was done and it did show a few small lymph nodes. At no time did a clinician state that you had damaged lymph nodes. You have been monitored by Dr. Kral, dentist; Dr. Jin, Medical Director, and Ms. Howard-Diggs, PA for symptoms. You have been given antibiotics and pain medication. You are scheduled to follow up with Dr. Jin next week.

Your lymph node is not an organ and at no time has there been damage to your organs.

Grievance denied.

ECF No. 65-1, p. 17. On appeal, following review of Plaintiff's medical records by the Bureau of Health Care Services, it was determined that the medical care provided to Plaintiff was appropriate and reasonable and no evidence of neglect or deliberate indifference was found. ECF No. 65-1, p. 10.

On September 15, 2008, Plaintiff submitted Grievance No. 243100 wherein he complained about coughing and headaches. On September 23, 2008, Plaintiff received a response to this grievance, which provides, in relevant part, as follows.

> 1. In your grievance, you claim that you have been on sick call, PA line and/or Dr. Jin's line for your complaints of "coughing and headaches" since early 2007 with no relief. The medical department has been treating your complaints aggressively. Along with frequent follow up appointments, Dr. Jin and Ms. Lucas, CRNP have made many medical adjustments. There is no clinical evidence to suggest your need for a second CT scan and/or MRI. When the clinicians examine you, there have been no findings of "damage and rupture" to your veins and lymph nodes as you claim. There has never been a delay in your treatment and/or lab work as you claim.
>
> 2. I am recommending that you continue to follow up for you complaints in sick call as necessary.
>
> 3. This is a frivolous grievance.

ECF No. 65-1, p. 32. On appeal, following review of Plaintiff's medical records by the Bureau of Health Care Services, it was determined that the medical care provided to Plaintiff was appropriate and reasonable and no evidence of neglect or deliberate indifference was found. ECF No. 65-1, p. 18.

On December 16, 2008, Plaintiff submitted Grievance No. 254112 wherein he complained about his medication. On December 30, 2008, Plaintiff received a response to this grievance, which provides, in relevant part, as follows.

> You state that you have been denied medical treatment. After reviewing your medical records, I find this statement false.

You state that you were ordered the medication Lisinopril at SCI-Smith field on 3/11/08. This was not the first time you were ordered Lisinopril. Dr. Long only ordered this for continuity. You were ordered lisinopril at SCI Greene since 7/26/07. You started "coughing" on 6/11/08. On 8/11/08 it was discontinued per your request by Ms. Lucas and [you were] placed on blood pressure checks two times weekly.

You state a "rupture" occurred in your head causing all day "head pain" as you claim with dizzy spells and bouts of lethargy. There is no evidence that any kind of "rupture" happened. You have had your blood pressure monitored since 8/18/08 with normal results. I am not sure what date you are speaking of when this "rupture" occurred, therefore I reviewed your chart and noted that you have been assessed by medical for headaches 8/25/08, 8/29/08, 9/3/08, 9/8/08, 9/11/08 and 9/15/08. You were ordered Vicoden and Torodol shots. You were released on 9/17/08. On 9/30/08, 10/3/08, 10/29/08, 11/10/08, 11/12/08 and 11/13/08 you were placed in medical once again and given Torodol shots for headache and released to G Block on 11/14/08. You were then seen again by medical on 11/17/08, 11/19/08, 12/1/08, 12/8/08, 12/15/08 and 12/17/08.

You state injections were given with no relief. These injections were Torodol and it is noted in your chart that you had relief.

You state that you want sent out for an MRI/CT scan or be seen by a neurologist. You had a CT scan done 3/2008 which was normal. An MRI is not indicated. Dr. Jin, our medical director, does not feel the need for a neurologist consult. A full neurological exam was done by Dr. Jin on 11/14/08 with normal results.

This grievance is denied.

ECF No. 65-2, p. 8. On appeal, following review of Plaintiff's medical records by the Bureau of Health Care Services, it was determined that the medical care provided to Plaintiff was appropriate and reasonable and no evidence of neglect or deliberate indifference was found. ECF No. 65-2, pp. 2-3.

On September 4, 2009, Plaintiff submitted Grievance No. 288177 wherein he complained about not receiving a snack bag with his medication. On September 15, 2008, Plaintiff received a response to this grievance, which provides, in relevant part, as follows.

> 1. On September 4, 2009, you were evaluated by Dr. Herbik. There is no need for you to have a snack bag.
>
> 2. You are permitted to keep two pieces of fruit in your cell at all times. In addition, the MD will change the time you receive your Indocin to the afternoon.
>
> 3. Your request for compensatory damages along with this frivolous grievance is denied.

ECF No. 65-2, p. 25. On appeal to the superintendent, it was verified that Plaintiff was not required to take his Varapamil medication with food and that he would receive his Indocin in the afternoon to resolve the issue of taking this medication with food. ECF No. 65-2, p. 27.

On April 23, 2010, Plaintiff filed Grievance No. 315846 concerning medical treatment for his broken toe. On May 6, 2010, Plaintiff received a response to this grievance, which provides, in relevant part, as follows.

> 1. You were seen by Dr. Herbik on May 5, 2010. He ordered another x-ray of your toe. As explained by Dr. Herbik there is no treatment indicated for your fractured toe.
>
> 2. Your request for compensatory damages is denied.

ECF No. 65-3, p. 3. On appeal to the superintendent, Plaintiff received the following response.

> You were seen by Dr. Herbik and he ordered another x-ray due to your complaints to ensure your toe is healing. This was no indication that treatment was needed. If you continue to experience pain and swelling sign up for sick call.

ECF No. 65-3, p. 5. On appeal, following review of Plaintiff's medical records by the Bureau of Health Care Services, it was determined that the medical care provided to Plaintiff was appropriate and reasonable and no evidence of neglect or deliberate indifference was found. ECF No. 83-1, p. 3.

On April 26, 2010, Plaintiff filed Grievance No. 316284 concerning medical treatment for rashes and hives. On May 6, 2010, Plaintiff received a response to this grievance, which provides, in relevant part, as follows.

> 1. You were seen by Dr. Herbik on May 5, 2010 for evaluation of your complaints of rashes and hives.
>
> 2. Dr. Herbik reviewed your record and there is no indication for a punch biopsy. You had a previous removal and biopsy of a growth on your scalp.
>
> 3. You were instructed to follow up on sick call if your rashes persist.
>
> 4. Your request for compensatory damages is denied.

ECF No. 65-3, p. 9. On appeal to the superintendent, Plaintiff received the following response.

> A previous punch biopsy was negative and your current condition does not show a medical necessity for another test. Dr. Herbik could not confirm the rash that you complained of, therefore, he could not treat it. If you feel you need further medical attention, sign up for sick call.

ECF No. 65-3, p. 11. On appeal, following review of Plaintiff's medical records by the Bureau of Health Care Services, it was determined that the medical care provided to Plaintiff was appropriate and reasonable and no evidence of neglect or deliberate indifference was found. ECF No. 83-1, p. 4.

On May 4, 2010, Plaintiff filed Grievance No. 316981 concerning the discontinuation of his Indocin. On May 7, 2010, Plaintiff received a response to this grievance, which provides, in relevant part, as follows.

> 1. Mr. Meyer is a licensed Physician Assistant. He determines what medications you currently need to be prescribed.
>
> 2. Your Indocin was discontinued due to your recent complaints of stomach discomfort.

3. Your request for compensatory damages along with this frivolous grievance is denied.

ECF No. 65-3, p. 15. On appeal to the superintendent, Plaintiff received the following response.

The medication was discontinued because you complained of stomach discomfort. The decision to discontinue the medication was made by PA MYERS due to your complaints not because of any civil claim you have against him. Sign up for sick call if your symptoms persist.

ECF No. 65-3, p. 17. On appeal, following review of Plaintiff's medical records by the Bureau of Health Care Services, it was determined that the medical care provided to Plaintiff was appropriate and reasonable and no evidence of neglect or deliberate indifference was found. ECF No. 83-1, p. 5.

While an intentional refusal to provide <u>any</u> medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere.[3] A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice." <u>Layne v. Vinzant</u>, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment do not state Eighth Amendment claims as there are typically several acceptable ways to treat an illness. <u>White v. Napoleon</u>, 897 F.2d 103, 110 (3d Cir. 1990) (citations omitted). *Accord* <u>Young v. Quinlan</u>, 960

---

3. *See, e.g.*, <u>Dias v. Vose</u>, 960 F.2d 143 (1st Cir. 1991); <u>United States v. DeCologero</u>, 821 F.2d 39, 42 (1st Cir. 1987) ("though it is plain that an inmate deserves adequate medical care, he cannot insist that his institutional host provide him with the most sophisticated care money can buy"); <u>Ferranti v. Moran</u>, 618 F.2d 888, 891 (1st Cir. 1980) (a dispute over the exercise of professional medical judgment may present a colorable claim of negligence, but it falls short of alleging a constitutional violation).

F.2d 351, 358 n.18 (3d Cir. 1992) (an inmate's disagreement with prison personnel over the exercise of medical judgment does not state claim for relief under section 1983).

Here, the record shows that Plaintiff received extensive medical treatment for his claims. Thus, Plaintiff has not established that any Defendant knew of and disregarded an excessive risk to inmate health or safety. Accordingly, the motions to dismiss Plaintiff's exhausted medical treatment claims should be granted.

2.      Smoking Claim

Plaintiff's remaining claim concerns his allegation that he was subjected to second hand smoke in the RHU exercise yard and that this constituted cruel and unusual punishment in violation of the Eighth Amendment. In order to make out a prima facie case that a prison official's actions violate the Eighth Amendment's prohibition against cruel and unusual punishment, an inmate must show two elements. First, a prisoner must show that the condition, either alone or in combination with other conditions, deprived him of "the minimal civilized measure of life's necessities," or at least a "single, identifiable human need." Wilson v. Seiter, 501 U.S. 294 (1991) (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The Supreme Court has explained that the first showing requires the court objectively to determine whether the deprivation of the basic human need was "sufficiently serious."

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is "part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation."

Hudson v. McMillan, 503 U.S. 1, 9 (1992) (citations omitted).

Second, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 833; Wilson, 501 U.S. at 297; Rhodes, 452 U.S. at 347. The

second prong requires a court <u>subjectively</u> to determine whether the officials acted with a sufficiently culpable state of mind. *Id.* "[O]nly the unnecessary and wanton infliction of pain implicates the Eighth Amendment." <u>Farmer</u>, 511 U.S. at 834 (quotation omitted).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

<u>Farmer</u>, 511 U.S. at 838. Furthermore, "prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Id.*, 511 U.S. at 845. Thus, a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

To prove an Eighth Amendment violation based on a substantial risk of serious harm from exposure to environmental tobacco smoke (ETS), a plaintiff must prove two objective elements: (1) that he was exposed to unreasonably high levels of ETS and (2) that today's society would not tolerate his exposure to this risk. <u>Helling v. McKinney</u>, 509 U.S. 25, 35-36 (1993) (stating that a court must "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwilling to such a risk."). In addition to the objective elements, plaintiff must prove a subjective element: that defendants were deliberately indifferent to plaintiff's exposure to the risk. Specifically, an inmate must demonstrate that prison officials both knew of and disregarded a substantial risk to the inmate's health or safety. See <u>Williams v. Griffin</u>, 952 F.2d 820, 826 (4th Cir. 1991) (stating that "[o]nce prison officials

become aware of a problem with prison conditions, they cannot simply ignore the problem, but should take corrective action when warranted").

Plaintiff fails to allege any facts to demonstrate that the conditions of his confinement violated his rights as protected by the Eighth Amendment. In this regard, on October 8, 2009, Plaintiff filed Grievance No. 291381 regarding this issue and on October 15, 2009, he received the following response.

> I am in receipt of your grievance and have been assigned to investigate your concerns. You state that you were subjected to cigarette smoke while you attended RHU yard on L-unit. You state that this shows "deliberate indifference" from staff and you are requesting $250,000.00.
>
> You did not request and I did not feel that an interview was necessary, noting the relative ease at which your concerns can be answered.
>
> The "Clean Indoor Air Act" states very specifically that "As of September 11, 2008, smoking is not permitted in any department building." There are no current restrictions on staff smoking in the outdoor area. However, I spoke to the officer who was supervising yard on the date you have indicated. He stated to me that no one mentioned the fact to him that they were in any way offended by him smoking (and that no other inmate has ever mentioned this to him).
>
> "Deliberate Indifference" is defined as "The careful preservation of one's ignorance despite awareness of circumstances that would put a reasonable person on notice of a fact essential to a crime." (Black's Law Dictionary, 8th Ed.). "Awareness of circumstances" denotes that someone must be made aware; this would entail direct communication (In an outside yard environment, this would mean "Verbal" communication). Since you did not speak to the officer, he was not aware of your distaste smoking, which makes it impossible for him to have been "Deliberately Indifferent."
>
> Since policy states that there is no smoking in "Department buildings" and the fact that the RHU Yard area is located outside of the building, the staff member has not violated any policies; when coupled with the fact that nothing was said by you at the time of the alleged "Deliberate Indifference", I must deny your request for $250,000.00 and furthermore I must completely deny your grievance.

ECF No. 65-3, p. 37. This determination was upheld on review by the Superintendent (ECF No. 65-3, p. 35) and on final appeal to the Secretary's Office (ECF No. 65-3, p. 33).

In order to allege liability under the Eighth Amendment, the conditions presenting the risk must be sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers. <u>Helling v. McKinney</u>, 509 U.S. 25, 33, 34-35 (1993) (internal citations omitted. In order to prevail on such a claim there must be a "substantial risk of serious harm," an "objectively intolerable risk of harm" that prevents prison officials from pleading that they were "subjectively blameless for purposes of the Eighth Amendment." <u>Farmer v. Brennan</u>, 511 U.S. 825, 842, 846, and n. 9 (1994). Plaintiff's allegations do not make such a showing. We are exposed to smokers in outside areas almost everywhere we go in society. While the Clean Indoor Air Act bans smoking in indoor areas, there is no such prohibition in outside areas. Accordingly, there simply is nothing to indicate that a reasonable person would have known that smoking outside creates an unreasonable risk to another's health and safety. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted as to this claim.

## III.   <u>CONCLUSION</u>

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss Amended Complaint filed by the Medical Defendants Dr. Herbik, Dr. Jin, Ronald Long, Michelle Lucas, and Chris Myers (ECF No. 59) be granted. It is further recommended that the Motion to Dismiss Amended Complaint filed by the Commonwealth Defendants Ascenio, S. Berrier, R. J. Godines, Nedra Grego, J. Leggett, B. Walsch, John Mcanany, R. Tretinik, Dorina Varner, Vasbinder (ECF No. 64) be granted.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. § 636(b)(1)(B) & (C)] and Rule 72.D.2 of the Local Rules of Court, the parties shall have fourteen

days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections may constitute a waiver of that party's appellate rights.

_____
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: October 18, 2010

       Jeffrey D. Turner
       EG-6080
       SCI Rockview
       P.O. Box A
       Bellefonte, PA 16823-0820